635 So.2d 401 (1994)
WHITNEY NATIONAL BANK
v.
Michael P. McCROSSEN and Venture International Holding Company.
No. 93-CA-2160.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1994.
William T. Finn, John Anthony Dunlap, Carver, Darden, Koretsky, Tessier, Finn, Blossman & Areaux, and Thomas J. McGoey II, Milling, Benson, Woodward, Hillyer, Pierson *402 & Miller, New Orleans, for plaintiff-appellant Whitney Nat. Bank.
Gary J. Elkins, Yvonne Chalker, Jerry F. Palmer, Elkins & Associates, New Orleans, for defendant-appellee Venture Intern. Holding Co.
Warren A. Goldstein, New Orleans, for defendants-appellees Con G. Demmas and Mary B. Demmas.
Before BARRY, KLEES and WARD, JJ.
KLEES, Judge.
This appeal stems from the district court's denial of plaintiff's petition for a writ of mandamus, which sought to have removed from the public mortgage records a notice of lis pendens affecting certain property, whose record owner is the plaintiff, Whitney National Bank ["Whitney"]. We affirm.
The subject of this action is immovable property located at 310 Howard Avenue in New Orleans, site of the nightclub "City Lights." On September 6, 1983, appellee Venture International Holding Company ["Venture"] (a partnership comprised of Gerald A. Derks, Con G. Demmas and Robert Tanner) acquired the property from 310 Howard Realty Company, executing a promissory note and mortgage in favor of the seller. The property was developed by Venture for use as the "Italian Village" during the 1984 Louisiana World Exposition. On September 14, 1987, Venture executed a promissory note in favor of Whitney, using the proceeds to develop the property into an upscale nightclub, which was subsequently leased to United States Entertainment Corporation d/b/a City Lights. Venture also pledged a collateral mortgage note executed by its lessee to secure its $1,473,082.78 obligation to Whitney.
Venture's note to 310 Howard Avenue Co. was not paid on time. After filing suit on the note, on May 18, 1989, 310 Howard Avenue Co. transferred to Whitney all of its rights, title and interest in and to the original note, the mortgage securing it and the pending litigation thereon. Rather than foreclose on the property at that time, Whitney cooperated with Venture in searching for a purchaser for the property.
The sale of the property was apparently being hampered by the presence of several inferior liens. Some time in 1990, as alleged by Venture, Whitney senior vice president Harry C. Stahel suggested to Venture partners Demmas and Derks that they agree to allow Whitney to proceed with a "friendly" foreclosure. The partners allegedly agreed to allow Whitney to foreclose (without seeking to enjoin or otherwise prevent foreclosure) solely for the purpose of clearing away inferior liens. Stahel allegedly promised to then sell the property for an amount sufficient to wipe out Venture's debt and give Venture credit for any remaining proceeds of the sale. According to Venture, the partners relied on Stahel's representations and agreed to the foreclosure rather than declaring Venture bankrupt, which would have given them a chance to sell the property out of bankruptcy.
At two foreclosure sales on January 10, 1991, the entire property was sold to Whitney for $675,000 (one parcel) and $95,000 (second parcel) respectively. Whitney credited Venture on its loans in the amount of the net sales price of each parcel ($610,900.64 and $62,995.03). Thereafter, Venture and Whitney continued in their attempt to find a third-party purchaser for the property.
Venture alleges that Whitney then unexplainedly pulled out of negotiations for a potential sale to a group known as the "Barnett group." On October 23, 1991, Whitney filed suit against Demmas (a co-signee with Venture) to recover the deficiencies on Venture's obligations to Whitney [hereinafter referred to as "the Demmas suit"]. Demmas answered asserting various affirmative defenses, including fraud, and reconvened asserting a cause of action for detrimental reliance. At the same time, Venture filed a separate lawsuit seeking to be recognized as the legal owner of the property ["the Venture suit"]. Venture also filed a notice of lis pendens in the mortgage records to alert third parties as to the pendency of an action regarding ownership of the property.
Whitney asserted an exception of no cause of action as to the reconventional demand and a motion for summary judgment in the *403 Demmas suit. At a hearing on February 12, 1993, the trial court denied Whitney's exception and motion, and Whitney applied to this court for supervisory writs. On May 18, 1993, while its writ application in the Demmas suit was under consideration, Whitney filed the instant petition seeking to have the lis pendens removed from the mortgage records. Whitney also moved to have its petition consolidated with the Demmas suit and the Venture suit, which motion was granted on May 27, 1993. Venture opposed Whitney's petition. After a hearing, the trial judge dismissed the petition for writ of mandamus on July 9, 1993. In written reasons for judgment, the trial judge stated that the issue of ownership of the property had not yet been decided, noting the pendency of the Demmas action and the writ application. The trial court also stated that in the event this court or the Supreme Court should reverse the denial of summary judgment in the Demmas suit, Whitney could re-file its petition for writ of mandamus. Apparently unbeknownst to the trial judge at the time, this court had denied Whitney's writ application on July 8, 1993 (one day prior to the judgment) on the grounds that relator had an adequate remedy on appeal.
Whitney now appeals the July 9th judgment denying its petition for writ of mandamus. The sole issue on appeal is whether the trial judge erred in refusing to order the cancellation of the notice of lis pendens. We find that he did not err.
The purpose of a notice of lis pendens is to give effective notice to third persons of the pendency of litigation affecting title to real property. The notice of lis pendens is not concerned with the merits of the litigation which prompted its recordation. Dane v. Doucet Bros. Const. Co., Inc., 396 So.2d 418, 420 (La.App. 4th Cir.1981) (citations omitted). Article 3751 of the Louisiana Code of Civil Procedure states that "The pendency of an action or proceeding in any court, state or federal, in this state affecting the title to, or asserting a mortgage or privilege on, immovable property does not constitute notice to a third person ... unless a notice of the pendency of the action or proceeding is made, and filed or recorded, as required by Article 3752". Article 3752 describes the form of the notice and states that it shall be recorded in the mortgage office of the parish where the property is situated.
Whitney first argues that the lis pendens should be removed because it violates federal law, specifically 12 U.S.C. § 91, which provides that no pre-judgment "attachment, injunction, or execution" shall be issued against a national banking association or its property. In Third National Bank in Nashville v. Impac Ltd., Inc., 432 U.S. 312, 97 S.Ct. 2307, 53 L.Ed.2d 368 (1977), which was relied upon by the trial judge, the Supreme Court concluded that § 91 was meant to have a limited scope, and therefore prevented only "state judicial action, prior to final judgment, which would have the effect of seizing the bank's property." Impac, supra, 432 U.S. at 323, 97 S.Ct. at 2314. The Court in Impac also strongly indicated that § 91 relates only to the actions of the bank's creditors, not non-creditors. Id., 432 U.S. at 322, 97 S.Ct. at 2313.
Despite the appellant's attempt to convince us to the contrary, Louisiana law is clear that the filing of a notice of lis pendens constitutes neither a lien nor a pre-judgment seizure. State ex rel. Washburn Land Co., Inc. v. Austermell, 185 So. 34, 35 (1938); see also, Crown Zellerbach Corp. v. Henderson, 483 So.2d 190, 192 (La.App. 2d Cir.1986). Under Code of Civil Procedure article 3751, a party to a suit involving real property must file a notice of lis pendens to bind third parties to the outcome of that suit; this is the only effect of lis pendens. See: Karst v. Fryar, 430 So.2d 318 (La.App. 3d Cir.1983).
Appellant attempts to extend the scope of § 91 by relying upon United States v. F.D.I.C., 881 F.2d 207 (5th Cir.1989), cert. den. 493 U.S. 1072, 110 S.Ct. 1118, 107 L.Ed.2d 1025 (1990), in which the court held that § 91 prohibited the plaintiff from filing an abstract of a judgment obtained against a Texas bank prior to the judgment becoming final. This case is clearly distinguishable from the instant case because under Texas law, the filing of the abstract of judgment created a lien on all real property of the bank. The court therefore held that the filing operated as an attachment.
*404 In the instant case, however, the filing of lis pendens does not constitute an attachment, lien or seizure and does not in any way prevent the sale of the property by Whitney. Therefore, the filing of lis pendens is not prohibited by federal law.
Whitney also argues that the lis pendens is illegal under state law because Venture's claim to ownership is allegedly based solely upon an oral agreement, evidence of which is inadmissible to challenge the record ownership of Whitney. This argument fails for two reasons. First, it concerns the merits of Venture's lawsuit, which ignores the fact that a notice of lis pendens is not concerned with the merits of the underlying litigation; it is merely notice that a suit has been filed. Dane v. Doucet Bros. Construction Inc., supra at 420. Secondly, Whitney's argument fails because Louisiana law allows the introduction of parol evidence to prove the affirmative defense of fraud, which Venture has asserted in its lawsuit.
In conclusion, we agree with the trial judge that the lis pendens is proper as long as there is an ongoing lawsuit in which the ownership of the property is being disputed. Whitney's appeal essentially asks us to decide the issue of ownership before it has been litigated in the trial court, which we decline to do.
Accordingly, we affirm the judgment of the district court.
AFFIRMED.