J^FITZSIMMONS, J.
On October 6, 2000, plaintiff, Ms. Mavis Elise Smith Jones, filed suit for rescission of a sale of an immovable based on lesion beyond moiety. La. C.C. art. 2589. The named defendants pertinent to this appeal are: United Resource Group, Inc. (URG); Joseph Lucio, individually and as CEO of URG; and Floyd Russo. After a hearing on various pre-trial motions and exceptions concerning Ms. Jones and Mr. Russo, the trial court ruled in favor of Mr. Russo. We affirm in part, reverse in part, and remand.

PROCEDURAL BACKGROUND

In her pleadings, Ms. Jones alleged that URG and Mr. Lucio acted in bad faith in connection with a dation en paiement, or giving in payment, of her property to URG. See La. C.C. art. 2655, et seq. Initially in her petition, she alleged that she did not understand the document was a dation, and believed that she had signed a re-finance of the note. Secondly, she attacked the transfer as lesionary, claiming that the property was worth more than $200,000.00. She further alleged that the property was sold by URG to Mr. Russo “solely to avoid a claim of lesion” by Ms. Jones. Ms. Jones prayed for rescission of the property transfer and injunctive relief, prohibiting sale of the property. Subsequently, she requested the filing of a notice of lis pendens in the parish records. See La. C.C.P. art. 3751, et seq. A temporary restraining order was issued and the notice of lis pendens filed. Later in the proceedings, she filed a motion for a hearing on her request for a preliminary injunction. See La. C.C.P. art. 3601, et. seq.
Mr. Russo filed a rule to dissolve the temporary restraining order, for cancellation of the notice of lis pendens, and for damages. Mr. Russo also filed peremptory exceptions, including objections of no cause of action and of no right of action. In his filings, Mr. Russo’s essential argument rested on Louisiana Civil Code article 2594. Mr. Russo asserted that, regardless of any showing of bad faith, [3the claim for lesion against him, a third party pur *565 chaser, was prohibited by law. See La. C.C. art. 2594. Later, Mr. Russo filed a rule for eviction to have Ms. Jones removed from the property in question, as she had agreed in writing.
A hearing was held on February 13, 2002. Among the issues discussed were the Russo rules, Mr. Russo’s peremptory exceptions of no cause of action and of no right of action, and Ms. Jones’ request for a preliminary injunction. At the hearing, Mr. Lucio appeared without counsel. The trial court decided to take evidence and hear argument from Mr. Russo and Ms. Jones, but hold the matter open and allow Mr. Lucio time to retain counsel and present any argument or evidence at a second hearing on February 22. At the end of the hearing, the rule for eviction was continued to the hearing on February 22, 2002.
Counsel for Ms. Jones, Mr. Russo, and Mr. Lucio appeared at the hearing on February 22. Mr. Lucio submitted evidence on the corporate status of URG in its home state, as did Ms. Jones.[1] During the hearing, the trial court also discussed with counsel its prior denial of Ms. Jones’ claim of a settlement agreement, and reminded the parties of its finding that the alleged settlement was not read into the record or reduced to writing and signed by the parties. Near the end of the hearing, the trial court orally granted Mr. Russo’s exception of no cause of action.[2] The trial court believed that Ms. Jones had no claim against the third party purchaser, Mr. Russo, and thus, no claim against the property. For those reasons, the court orally denied injunctive relief and ordered cancellation of the lis pendens.
Finally, the rule for eviction was argued. When counsel for Ms. Jones was Lasked if she wished to respond to the Russo argument, she responded, “No, Your Honor, I would just ask for a reasonable amount of time for her to vacate the premises.”
The trial court signed a judgment on March 5, 2002. The judgment dissolved the temporary restraining order, denied the request for a preliminary injunction, ordered cancellation of the lis pendens, ordered Ms. Jones to vacate the premises, and denied Ms. Jones’ rule for enforcement of a settlement agreement.

RELEVANT FACTS

According to the record, Ms. Jones owned an undetermined interest[3] in approximately two acres that she inherited from her mother. The property was subject to a mortgage executed by Ms. Jones in April of 1998. The mortgage secured a noté in the amount of $48,000.00. Admittedly, no payments on the mortgage were ever made by Ms. Jones. At the February 13th hearing, Ms. Jones also admitted that, contrary to her allegations, she understood the transaction with URG was not a re-finance. She also admitted that she agreed to the dation because the prop *566 erty had been seized by the sheriff and was proceeding to foreclosure. Although Ms. Jones testified that she felt she had no room to negotiate, she admitted that she did negotiate the amount of cash to be paid to her from $5000.00 to $10,000.00, and for free occupancy until she vacated the property in October of 2000. Ms. Jones also admitted that, after the first notice of seizure, she tried .to refinance or sell the property, but had no success other than the offer by URG. On July IS, 2000, she executed the dation en paiement, or giving in payment, of the property to URG, in exchange for forgiveness of the debt of $48,000.00, and any interest, fees, commissions, and penalties, plus $10,000.00 to her. In the dation document, she also agreed to vacate the property by October 13, 2000. At the | ¡^February 13th hearing, both Mr. Russo and Ms. Jones testified that they did not get along and did not want to deal with each other directly.
On the same day the dation was executed in July of 2000, URG sold the property to Mr. Russo for $48,000.00. Evidence from the first hearing showed that Mr. Russo’s money had been used by URG to acquire Ms. Jones’ mortgage and to pay her $10,000.00. On September 20, 2000, Mr. Russo agreed to sell 6.9 acres, including a building, where he ran a business, for $1,000,000.00. The property included the interest in the two acres forpierly owned by Ms. Jones. However, various conditions of sale were not met, and the sale was never completed.

PRELIMINARY INJUNCTION

Ms. Jones assigned error to the denial of her request for preliminary injunction. She asserts that she proved irreparable harm and that she would likely prevail on the merits of the lesion claim.
For the issuance of a preliminary injunction, Ms. Jones had to prove that irreparable loss would otherwise result and make a prima facie showing that she would prevail on the merits of her action for lesion beyond moiety. See La. C.C.P. art. 3601; Malek v. Yekani-Fard, 451 So.2d 669, 673 (La.App. 1 Cir.1984). A “prima facie case” is one in which a showing is made “[sjufficient to establish a fact or raise a presumption unless disproved or rebutted.” Black’s Law Dictionary, West 7th ed.1999, p. 1209. Issuance or denial of a preliminary injunction lies within the trial court’s discretion. Palama v. Livaudais, 179 La. 201, 153 So. 691, 692 (1934); Seafood Restaurant Services, Inc. v. Bonanno, 95-0058, p. 7 (La.App. 1 Cir. 11/9/95), 665 So.2d 56, 61.
After a thorough review of the record, we see no manifest error and find that the denial of the request for preliminary injunction was correct. Ms. Jones, on the brink of foreclosure, admitted her debt and knowingly executed a dation en paiement in exchange for forgiveness of the debt of $48,000.00, plus almost four Lyears of interest, penalties, and fees or commissions, and an additional $10,000.00 paid to her. To prevail on her action for rescission and return of the property based on lesion, Ms. Jones had the burden to prove, by clear and convincing evidence, that the price given was less than one-half of the “fair market value” of the property at the time of the transfer. La. C.C. art. 2589; Webb v. State, Department of Transportation & Development, 470 So.2d 994, 996 (La.App. 1 Cir.), writ denied, 476 So.2d 357 (La.1985). However, without calculation of the interest, penalties, and any included fees, Ms. Jones failed to prove the total transfer price. In addition, under the particular facts here, the trial court could have reasonably found that the price in the contract for the failed sale for 6.9 acres was not sufficiently indicative of the value of Ms. Jones’ as yet undetermined interest in *567 approximately two acres. Thus, the record supports a conclusion that the evidence was not sufficient to establish that the estimated price paid for an uncertain interest in about two acres was less than half of the property’s fair market value at the time of the transfer. All of these facts spawn too much speculation. However, if the facts prove to be more determinative on her suit in chief, her remedy could follow. At this time, based on these findings, we see no abuse in a determination that Ms. Jones failed to prove that she would prevail on the merits of the action for lesion. Thus, we affirm the denial of the preliminary injunction.

LIS PENDENS

Apparently, the trial court can-celled the notice of lis pendens based solely on its belief that Civil Code article 2594 barred an action for rescission and return of the property against Mr. Russo, regardless of any showing of bad faith. Ms. Jones assigned error to that cancellation. Essentially, she argues a bad faith third party purchaser is not shielded from a suit for rescission by article 2594. Asserting that a rescission and return of the property to Ms. Jones would affect the title to the property, she asks that the notice of lis pendens be reinstated.
[7The recordation of a notice of lis pendens alerts third parties to pending litigation affecting title to immovable property and binds them to the outcome of the litigation. See La. C.C.P. arts. 3751-52; Whitney National Bank v. McCrossen, 93-2160, pp. 3-4 (La.App. 4 Cir. 3/29/94), 635 So.2d 401, 403, unit denied, 94-1108 (La.7/1/94), 639 So.2d 1164. As such, the validity of the notice of a potential defect does not rest on the merits of the litigation. Whitney National Bank, 93-2160 at p. 3, 635 So.2d at 403. “When judgment is rendered ... against the party who filed the notice ..., the judgment shall order the cancellation of the notice .... ” La. C.C.P. art. 3753. Thus, in the interest of justice and to protect the stability of titles in the public record, the notice in most cases should remain until judgment or some binding resolution that removes the property from the suit. See Whitney National Bank, 93-2160 at pp. 2-4, 635 So.2d at 403-04.
Initially, we note that Ms. Jones’ failure to prove that she would likely prevail on the merits of the action for rescission based on lesion is not determinative of the validity of the cancellation of the notice of lis pendens. The issue then becomes whether Ms. Jones sufficiently alleged facts that would affect the title to the property.
“The sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable.” La. C.C. art. 2589. In other words, the vendor may bring an action against his vendee. An action for return of the property based on lesion cannot be brought against a “third person who bought the immovable from the original buyer.” La. C.C. art. 2594. Thus, resolution of the arguments between Ms. Jones and Mr. Russo rests on whether Mr. Russo is a “third person” under Civil Code article 2594.
“Legislation is a solemn expression of legislative will.” La. C.C. art. 2. In article 2594 of our Civil Code, the legislature adopted a jurisprudential rule. See 8La. C.C. art. 2594, Revision Comments-1993 (a), citing Evergreen Plantation, Inc. v. Zunamon, 319 So.2d 543 (La.App. 2 Cir. 1975). Article 2594’s Revision Comments-1993 (a) notes that although the article is new, “[i]t does not change the law.” Further proof of the legislative intention is found in the comments to Civil Code article 2589. Article 2589’s Revision Com *568 ments-1993 (c) also cites Evergreen Plantation, Inc. v. Zunamon, 319 So.2d 543 (La.App. 2 Cir.1975), and states that: “An action in lesion cannot be exercised against a third-party purchaser unless fraud or bad faith is proven.”
Citing Morgan v. O’Bannon & Julien, 125 La. 367, 51 So. 293 (1910) and other cases, the second circuit in Evergreen Plantation, Inc., 319 So.2d at 546, reiterated the jurisprudential “rule that an action in lesion beyond moiety cannot succeed against a third party purchaser unless fraud or bad faith is proved.” (Emphasis added.) After a review of the record, the second circuit found no evidence of bad faith or fraud, and considered the subsequent purchasers of the property to be in good faith. Therefore, the court found that the action based on lesion could not be “successfully pursued against” the subsequent vendees or third party purchasers. Evergreen Plantation, Inc., 319 So.2d at 547.
In Morgan, the supreme court recognized the jurisprudential rule that “lesion does not extend to third persons buying in good faith from the vendee.” Morgan, 51 So. at 294 (emphasis added). After reviewing the facts, the court found that a subsequent vendee’s knowledge that the original sale was for an inadequate price did not equal bad faith. “That knowledge of itself is not sufficient to render an owner, who is an innocent third person, liable to an action of lesion in a purchase of property .Id.
Based on our review of the leading jurisprudence, the purpose of the jurisprudential rule was to implement the provisions of article 2589, while protecting those persons who purchased in good faith from the vendee accused of [9lesion. Under the rule, taking the property from an innocent second vendee, a true “third person” to the lesionary transaction, was barred. However, by removing that protection if bad faith or fraud was proved, the court prevented the original vendee from conspiring with another, a subsequent vendee, to defeat impermissibly the remedy of rescission and return of the property.
From our review of the applicable article, including its comments, and cited jurisprudence, we find that the legislature intended to adopt all facets of the jurisprudential rule. The term “third person” was intended to mean a second vendee who acted in good faith. If fraud or bad faith is proven, the second vendee is not a true “third person” to the lesionary transfer. The protection of article 2594 is not available.
Based on our interpretation of the term “third person” in article 2594, an action for rescission based on lesion may not be brought against the subsequent vendee, unless fraud or bad faith is proved. Here, the subsequent vendee is Mr. Russo. If bad faith or fraud is proven, the court could order the rescission of the dation and the title to the property would be affected. Therefore, the cancellation before judgment was in error. The notice of lis pen-dens is ordered to be reinstated on the public record.

INTERLOCUTORY RULING ON SETTLEMENT AGREEMENT

Lastly, Ms. Jones assigned error to the trial court’s denial of her motion to enforce a settlement agreement, “when that matter was not, and had never been, formally before the court.” However, from our review of this record, we see no reversible error.
On July 16, 2001, Ms. Jones filed a motion to enforce a settlement agreement, or alternatively, a motion for a hearing on the request for preliminary injunction. The show cause hearing was set for Au *569 gust 13, 2001. The record contains no minutes from the hearing or evidence that the hearing was continued or |incancelled. Neither does the record contain any evidence of a written compromise signed by Mr. Russo or of a settlement “recited in open court .... ” La. C.C. art. 3071. In discussions with counsel during the hearing on February 22, 2002, the trial court stated that: “we had a rule on the settlement agreement of whether it was a settlement or not, and it was decided that it was not because it was not done in open court or in writing.” Although Ms. Jones’ counsel was present, she did not object to the discussion or raising of that issue. Her counsel did not deny that a prior ruling was made after a hearing. Subsequently, in the judgment now on appeal, the trial court reiterated that Ms. Jones’ rule to enforce a settlement agreement was previously heard and decided adversely to plaintiff. However, the court noted that no formal judgment had been signed. In the next paragraph of the judgment, the trial court formally denied the rule to enforce.
Based on the evidence and showing made, we see no error based on the court’s inclusion of a prior oral interlocutory ruling in a subsequently signed judgment. Nor does the record before us support a finding that the trial court erred in its prior denial of the motion to enforce.
For these reasons, we affirm the denial of the preliminary injunction and inclusion in the judgment of the prior ruling on the motion to enforce a settlement agreement. We reverse the cancellation of the lis pen-dens. We order that it be reinstated in the parish records. We remand the case to the court below for further proceedings consistent with this opinion. The costs are assessed equally to plaintiff-appellant, Ms. Jones, and defendant-appellee, Mr. Russo.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. At both February hearings, Ms. Jones argued that URG was not in good standing in its state of incorporation at the time of both sales. It is also unclear from the record whether Mr. Lucio was acting for URG or a similarly named corporation, United Resources Group, Inc. However, the trial court did not issue specific rulings on the corporate questions and those issues are not on appeal.

. Although the minutes and the transcript of the February 22nd hearing show that the trial court granted Mr. Russo’s peremptory exception raising the objection of no cause of action, the record contains no signed judgment to that effect. Thus, from the only judgment before us, it appears that Mr. Russo is still a party to the suit.

.Evidence submitted at the February 13th hearing raised potential title problems that might affect her share of ownership in the property. These problems predated the sale by Ms. Jones to URG.