| 225 BARONNE COMPLEX, LLC | * | NO. 2024-CA-0401 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| ROY ANDERSON CORP. AND THE HONORABLE CHELSEY R. NAPOLEON, IN HER CAPACITY AS THE RECORDER OF MORTGAGES FOR ORLEANS PARISH | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-01044, DIVISION "E"
Honorable Omar Mason, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Dale N. Atkins, Judge Karen K. Herman, Judge Nakisha Ervin-Knott)


James M. Garner
David A. Freedman
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, LA 70112

Mark W. Frilot
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170

     COUNSEL FOR PLAINTIFF/APPELLEE, 225 Baronne Complex, L.L.C.


Lloyd N. Shields
Elizabeth L. Gordon
IRWIN FRITCHIE URQUHART MOORE & DANIELS
400 Poydras Street, Suite 2700
New Orleans, LA 70130

     COUNSEL FOR DEFENDANT/APPELLANT, Roy Anderson Corp.

                                       **AFFIRMED**
                                **JANUARY 31, 2025**

DNA

KKH

NEK

This civil dispute concerns the cancellation of a lien recorded by a contractor. Appellant, Roy Anderson Corp. ("RAC"), seeks review of the trial court's April 17, 2024 judgment, which granted the "Petition for Cancellation of Lien" filed by Appellee, 225 Baronne Complex, L.L.C. ("225 Baronne"); overruled the "Peremptory Exception of *Res Judicata* and Opposition to Petition for Cancellation of Lien" ("*Res Judicata* Exception") filed by RAC; and ordered the Honorable Chelsey R. Napoleon, in her capacity as Recorder of Mortgages for Orleans Parish, to remove and cancel RAC's lien recorded as Instrument No. 2015-54559 in the Orleans Parish Mortgage Records. For the following reasons, we affirm the trial court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### First Removal Suit

This dispute arose from a construction project for an apartment complex, hotel, and parking garage located at 225 Baronne Street in New Orleans. On October 23, 2015, 225 Baronne, the owner of the property, filed a "Notice of Termination of the Work," stating in part that the work done by RAC, a contractor, was "substantially complete." 225 Baronne's filing of the notice triggered a sixty-

1

day period for RAC to file a lien. On December 22, 2015, RAC filed a lien on the project ("Lien") with the Clerk of Civil District Court for the Parish of Orleans as the recorder of mortgages in Orleans Parish ("Recorder of Mortgages"). In its Lien, RAC alleged the owner of the project, 225 Baronne, was liable to RAC for $15,401,300.00. Specifically, RAC contended the amount due stemmed from a November 8, 2013 contract between RAC and 225 Baronne. RAC explained the amount represented material, labor, equipment, and services it provided to 225 Baronne in connection with the construction project.

Subsequently, on January 12, 2016, 225 Baronne filed a "Petition for Removal of Statement of Claim and Privilege and For Damages" ("First Removal Petition") against RAC and the Recorder of Mortgages. Therein, 225 Baronne contended RAC's Lien violated the parties' contract and was improper under the Louisiana Private Works Act ("PWA").[1] 225 Baronne contended RAC's Lien violated a section of the contract because prior to recording the Lien RAC confirmed 225 Baronne was not in default of its payment obligations under the contract. 225 Baronne quoted the pertinent section of the contract, explaining the contract term meant RAC agreed that, as long as 225 Baronne was not in default of any payment obligations, RAC would not voluntarily permit any lien to be placed on the project. Further, 225 Baronne alleged RAC's Lien violated the PWA because it included duplicate and unsupported claims by "includ[ing] . . . vaguely described amounts that RAC ha[d] not substantiated" and by "provid[ing] no description of claim elements." 225 Baronne contended this violated the PWA's requirement in La. R.S. 9:4822 that a lien "set forth the amount and nature of the obligation giving rise to the claim or privilege and reasonably itemize the elements

---

[1] The PWA is codified at La. R.S. 9:4801, et seq.

comprising it including the person for whom or to whom the contract was performed, material supplied, or services rendered." 225 Baronne requested that the trial court schedule a summary trial on 225 Baronne's First Removal Petition; thereafter direct the Recorder of Mortgages to cancel and remove RAC's Lien; and award all damages and attorney's fees to 225 Baronne that it had incurred as a result of "RAC's refusal, without reasonable cause, to remove and cancel its improper and unsupportable Lien."

After holding a summary trial on the merits of 225 Baronne's First Removal Petition, on February 22, 2016, the trial court issued a judgment ("First Removal Judgment"), which granted 225 Baronne's First Removal Petition and ordered the Recorder of Mortgages to remove and cancel RAC's Lien. On March 15, 2016, RAC filed a devolutive appeal of the First Removal Judgment. Also, in response to the First Removal Judgment, on April 21, 2016, the Recorder of Mortgages removed RAC's Lien from the Orleans Parish Mortgage Records.[2]

In a December 14, 2016 Opinion, this Court concluded the trial court erred in the First Removal Judgment by granting 225 Baronne's First Removal Petition and cancelling RAC's Lien. *225 Baronne Complex, LLC v. Roy Anderson Corp.*, 2016-0492, p. 15 (La. App. 4 Cir. 12/14/16), 2016 WL 7238975, at *8. Specifically, this Court held that RAC's Lien met the procedural requirements of a valid lien as required by La. R.S. 9:4822, while 225 Baronne presented insufficient evidence to warrant the Lien's cancellation pursuant to La. R.S. 9:4833. *Id.* Accordingly, this Court reversed the trial court's First Removal Judgment and ordered the reinstatement of RAC's Lien. *Id.* On December 28, 2016, 225 Baronne

---

[2] We note that RAC filed a devolutive rather than a suspensive appeal, hence why the Recorder of Mortgages proceeded with removing the Lien from the Orleans Parish Mortgage Records.

timely filed an application for rehearing with this Court, which the Court ultimately denied on January 18, 2017. On December 21, 2016, RAC filed an ordinary proceeding to secure payment from 225 Baronne, i.e., a petition to enforce its Lien. Therein, RAC referenced the Lien, its instrument number, and the location of recordation.

Then, on February 17, 2017, 225 Baronne filed a writ application with the Louisiana Supreme Court. On April 7, 2017, the Louisiana Supreme Court denied 225 Baronne's writ application. *225 Baronne Complex, LLC v. Roy Anderson Corp.*, 2017-0326 (La. 4/7/17), 218 So.3d 116.

Following the Louisiana Supreme Court's denial of 225 Baronne's writ application, on April 26, 2017, RAC requested reinstatement of the Lien; and then on May 26, 2017, RAC filed a petition for writ of mandamus, seeking an order compelling the Recorder of Mortgages to reinstate the Lien and to cancel the First Lien Removal Judgment from the Orleans Parish Mortgage Records. On May 26, 2017, RAC filed a Notice of *Lis Pendens*, therein referencing the Lien enforcement action and the Lien's original instrument number (Instrument No. 2015-54559). On September 1, 2017, the Recorder of Mortgages reinstated RAC's Lien utilizing the Lien's original recordation information, i.e., Instrument No. 2015-54559. Thereafter, RAC's Lien remained in the Orleans Parish Mortgage Records.

Just under two years later, on June 11, 2019, the Louisiana Legislature amended the PWA. In pertinent part, the Legislature amended La. R.S. 9:4833(E), with the amendments to go in effect on January 1, 2020.

**Second Removal Suit**

On February 4, 2022, 225 Baronne filed a "Petition for Cancellation of Lien Pur[s]uant to [La. R.S.] 44:114(A)(2) and 9:4833(E)" ("Second Removal

Petition"). 225 Baronne filed its Second Removal Petition on the basis that RAC did not file its Notice of *Lis Pendens* until May 26, 2017, which was more than one year after RAC filed its Lien and thus in contravention of La. R.S. 9:4833(E). 225 Baronne contended that "[u]nder the clear and unambiguous provisions of [La. R.S.] 9:4833(E), the Recorder [of Mortgages] 'shall' cancel the Lien upon 'receipt of a written signed application'" requesting same. Therefore, 225 Baronne explained that its Second Removal Petition constituted its request that the trial court order the Recorder of Mortgages to cancel RAC's Lien pursuant to La. R.S. 9:4833(E).

In response, on April 4, 2022, RAC filed its *Res Judicata* Exception. Specifically, RAC explained its *Res Judicata* Exception was based on the fact that "[a]t no time during the pendency of the First Removal Lawsuit did 225 Baronne amend its pleadings or file a separate action to request a cancellation of the Lien pursuant to La. R. S. 9:4833 based on RAC's purported failure to file a Notice of *Lis Pendens* on or before December 22, 2016 - - a cause of action that existed at the time of the final judgment in the First Removal Action and the cause of action 225 Baronne asserts in this lawsuit." In the alternative, RAC contended that even if the trial court found *res judicata* did not bar 225 Baronne's claims in its Second Removal Petition, RAC nonetheless complied with the requirements of La. R.S. 9:4833(E). In this regard, RAC asserted the requirements of La. R.S. 9:4833(E) could not be met until after April 7, 2017, at the earliest, when the Louisiana Supreme Court denied 225 Baronne's writ application concerning this Court's reversal of the First Removal Judgment. RAC contended that the situation presented "unique circumstances," under which it could not reference its Lien as

5

required by La. R.S. 9:4833(E) until it had a final judgment allowing it to do so, i.e., not until after the Louisiana Supreme Court's denial of the writ.

On April 29, 2022, the trial court issued a judgment, which granted 225 Baronne's Second Lien Removal Petition, overruled RAC's *Res Judicata* Exception, and directed the Recorder of Mortgages to remove and cancel RAC's Lien ("Second Removal Judgment"). On August 26, 2022, the trial court denied a Motion for New Trial filed by RAC regarding the Second Removal Judgment. Subsequently, RAC appealed the April 29, 2022 and August 26, 2022 judgments to this Court.

As this Court explained in its March 24, 2023 Opinion, "After the case was docketed and fully briefed, RAC filed a Motion to Dismiss or, Alternatively, Remand for Trial Court Consideration of New Evidence . . . ." *225 Baronne Complex, LLC v. Roy Anderson Corp.*, 2022-0793, p. 2 (La. App. 4 Cir. 3/24/23), 382 So.3d 182, 184. This Court described the new evidence: "According to RAC, it has discovered previously unavailable evidence confirming that as of February 15, 2017[,] . . . 225 Baronne knew of all of the facts alleged in this lawsuit and the claim it has asserted in the Second Lien Removal Suit." *Id.* This Court remanded the matter "in light of the purported new evidence" for the trial court to consider whether the evidence was "relevant in resolving the *res judicata* issue" and "to prevent a potential miscarriage of justice from the failure to consider such evidence." *Id.* at p. 3, 382 So.3d at 184.

After the remand, on April 5, 2024, the trial court once again heard 225 Baronne's Second Lien Removal Suit and RAC's *Res Judicata* Exception. In pertinent part, the evidence introduced at the hearing included a February 15, 2017 memorandum by 225 Baronne (i.e., the evidence for which this Court remanded

6

the matter), which stated: "Finally, to our knowledge, RAC did not record timely a notice of pendency of action regarding RAC's December 22, 2016, suit to enforce its Lien. Accordingly, while RAC's Lien is still enforceable against 225 Baronne, the Lien is ineffective against any third parties. [La. R.S.] 9:4833[(E)]." RAC alleged that based on this memorandum, 225 Baronne knew it had a claim to seek cancellation of RAC's Lien as early as February 2017 and should have asserted same in the First Removal Suit.

At the close of the hearing, the trial court orally ruled. Regarding whether RAC timely filed its Notice of *Lis Pendens*, the trial court found La. R.S. 9:4833(E) "requires the filing of the notice of *lis pendens* within a year of the recordation of the lien which was . . . December 22, 2015," and concluded "this was not done within the statutory period of time following the recordation of the lien." In terms of RAC's *Res Judicata* Exception, the trial court stated RAC did not meet the fourth element of *res judicata*—whether the cause(s) of action asserted in the second suit existed at the time of the final judgment in the first litigation. Specifically, the trial court stated, "The *lis pendens* requirement within a year after filing of the lien did not exist at the time of the final judgment in the first . . . litigation," noting the trial court's February 22, 2016 First Removal Judgment was the final judgment for *res judicata* purposes. Accordingly, the trial court orally overruled RAC's *Res Judicata* Exception and ordered the Recorder of Mortgages to remove RAC's Lien from the Orleans Parish Mortgage Records. Following the hearing, the trial court issued its written judgment.

### *April 17, 2024 Judgment*

In this appeal, RAC seeks review of the judgment signed by the trial court on April 17, 2024. That judgment states:

On April 5, 2024, the Court held a hearing on: 225 Baronne['s] . . . Petition for Cancellation of Lien Pursuant to [La. R.S.] 44:114(A)(2) and 9:4833(E); and [RAC]'s Peremptory Exception of *Res Judicata*. . . . After considering the pleadings, briefs, exhibits, arguments of counsel, and applicable law, and for the reasons stated by the Court at the April 5, 2024 hearing, this Court finds as follows:

**IT IS ORDERED, ADJUDGED, AND DECREED** that there be judgment in favor of 225 Baronne . . . and against [RAC], overruling [RAC]'s Peremptory Exception of *Res Judicata*; and

**IT IS ORDERED, ADJUDGED, AND DECREED** that 225 Baronne Complex['s] . . . Petition for Cancellation of Lien Pursuant to [La. R.S.] 44:114(A)(2) and 9:4833(E) is **GRANTED** and that Chelsea [sic] R. Napoleon, in her capacity as Recorder of Mortgages for Orleans Parish, is hereby directed to remove and cancel the Statement of Lien and Privilege recorded as Instrument Number 2015-54559 in the Mortgage Records for Orleans Parish.

RAC's timely appeal followed.

## ASSIGNMENTS OF ERROR

In its brief to this Court, RAC asserts five assignments of error. Specifically, it contends:

1. The Trial Court erred as a matter of law when it granted the relief in the Second Lien Removal Petition ("Cancellation Ruling").

2. The Trial Court erred as a matter of law when it directed the Recorder of Mortgages for Orleans Parish to remove and cancel the Lien ("Mandamus Ruling").

3. The Trial Court erred as a matter of law when it overruled RAC's exception of *res judicata* ("Exception Ruling").

4. The Trial Court erred as a matter of law when it overruled RAC's exception of *res judicata* by failing to acknowledge that, for *res judicata* purposes, the final judgment is the final and definitive judgment of the appellate courts when the trial court's judgment is reversed on appeal. *See* La. R.S. 13:4231, cmt. (d).

5. As a matter of law, 225 Baronne's Second Lien Removal Suit is precluded under La. [C.C.P.] art. 425 and La. R.S. 13:4231.

Based on our review of the record, however, resolution of this matter hinges on resolving two issues. First, did RAC have to file a notice of *lis pendens* within one

8

year of filing its Lien on December 22, 2015? We address this question first because if the answer is no, then that might render RAC's May 26, 2017 Notice of *Lis Pendens* timely, such that the trial court should not have granted 225 Baronne's Second Removal Petition. If the answer to that question is yes, however, then we must move onto the second issue. Did *res judicata* nonetheless preclude 225 Baronne's Second Removal Petition?

## DISCUSSION

### Issue One: When Did RAC Have to File Its Notice of *Lis Pendens*

In its brief to this Court, RAC asserts that it could not have filed its Notice of *Lis Pendens* until after the Louisiana Supreme Court issued its writ denial on April 7, 2017, because there was nothing in the Orleans Parish Mortgage Records regarding RAC's Lien after the trial court rendered its First Removal Judgment in April 2016.[3] To this end, RAC claims that it could not have complied with La. R.S. 9:4833(E)'s requirement that a notice of *lis pendens* "shall contain a reference to the recorded statement of claim or privilege." 225 Baronne counters that RAC had only one year after filing its Lien to file its Notice of *Lis Pendens*, i.e., a deadline of December 22, 2016. 225 Baronne argues that RAC's "excuses" for not timely filing a notice of *lis pendens* are "legally irrelevant" and contradicted by RAC's other filings wherein RAC referenced the Lien and its instrument number. Before addressing these arguments, we begin with the standard of review applicable to this issue.

---

[3] Specifically, RAC argues that the earliest it could have filed its Notice of *Lis Pendens* was April 14, 2017, citing La. C.C.P. art. 2166 in support. Louisiana Code of Civil Procedure Article 2166(E) states:

> When an application for certiorari to the supreme court is timely filed, a judgment of the court of appeal becomes final and definitive after a delay of five days, exclusive of legal holidays, commencing to run on the day after the clerk has mailed the denial by the supreme court of the application for certiorari.

9

***Standard of Review***

Resolution of this issue requires us to interpret the PWA, specifically the time period found in La. R.S. 9:4833(E). An appellate court reviews a question of law, including the proper interpretation of a statute, under the *de novo* standard of review, thereby giving no deference to the trial court's interpretation of same. *Commodore v. City of New Orleans*, 2019-0127, p. 9 (La. App. 4 Cir. 6/20/19), 275 So.3d 457, 465-66 (first citing *Carver v. La. Dep't of Pub. Safety*, 2017-1340, p. 4 (La. 1/30/18), 239 So.3d 226, 230; and then citing *St. Bernard Port, Harbor & Terminal Dist. v. Guy Hopkins Constr. Co.*, 2016-0907, p. 4 (La. App. 4 Cir. 4/5/17), 220 So.3d 6, 10). Accordingly, we review the first issue *de novo*.

***General Rules of Statutory Interpretation***

As this Court has previously explained, "The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law." *Commodore*, 2019-0127, p. 13, 275 So.3d at 468 (quoting *Pumphrey v. City of New Orleans*, 2005-979, p. 10-11 (La. 4/4/06), 925 So.2d 1202, 1209). This is because "[l]egislation is the solemn expression of legislative will," so "[t]he rules of statutory construction are designed to ascertain and enforce the intent of the Legislature." *Id.* Accordingly, courts must apply and interpret statutes "with logic and the presumed fair purpose and intention of the Legislature in passing it." *Id.* at p. 13, 275 So.3d at 469 (quoting *Pumphrey*, 2005-979, p. 11, 925 So.3d at 1210). One such rule of statutory interpretation is that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. Additionally, "[c]ourts should give

10

effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." *Commodore*, 2019-0127, pp. 13-14, 275 So.3d at 469 (quoting *Pumphrey*, 2005-979, p. 11, 925 So.2d at 1210).

### *Rules of Statutory Interpretation Particular to Liens*

More particularly, in discussing liens, this Court has explained, "It is a long[-]standing principle of statutory interpretation that statutes creating liens and privileges are *stricti juris* and their provisions are to be strictly construed against the parties in whose favor the liens are created." *Mid-S. Plumbing, LLC v. Dev. Consortium-Shelly Arms, LLC*, 2012-1731, p. 11 (La. App. 4 Cir. 10/23/13), 126 So.3d 732, 739 (citing *State Through Div. of Admin. v. McInnis Bros. Constr.*, 1997-0742, p. 9 (La. 10/21/97), 701 So.2d 937, 944). This strict construction is because the PWA is an act in derogation of the general law of contract. *Authement's Ornamental Iron Works, Inc. v. Reisfeld*, 376 So.2d 1061, 1064 (La. App. 4th Cir. 1979) (citing *Lafayette Woodworks v. Boudreaux*, 255 So.2d 176, 179 (La. App. 1st Cir. 1971)). Accordingly, the failure to expressly satisfy the requirements of statutes creating liens and privileges subjects a lien to cancellation. *Mid-S. Plumbing, LLC*, 2012-1731, p. 11, 126 So.3d at 740 (first citing *Bradley Elec. Serv., Inc. v. 2601, L.L.C.*, 2011-0627, 0628, pp. 4-5 (La. App. 4 Cir. 12/14/11), 82 So.3d 1242, 1244; and then citing *Tee It Up Golf, Inc. v. Bayou State Constr., L.L.C.*, 2009-855, pp. 3-5 (La. App 3 Cir. 2/10/10), 30 So.3d 1159, 1161-62).

### *Purpose of the Notice of Lis Pendens*

The specific statute at issue herein, the PWA, is codified at La. R.S. 9:4801, et seq. According to La. R.S. 9:4833(E), a recordation of statement of claim or

privilege and the privilege preserved by it are ineffective as to third persons "unless a notice of pendency of action in accordance with Article 3752 of the Code of Civil Procedure, identifying the suit required to be filed by R.S. 9:4823, is filed within one year after the date of filing the statement of claim or privilege."[4] The "notice of pendency" or notice of *lis pendens* must "contain a reference to the recorded statement of claim or privilege." La. R.S. 9:4833(E). In explaining a notice of *lis pendens*, La. C.C.P. art. 3751 provides:

> The pendency of an action or proceeding in any court, state or federal, in this state affecting the title to, or asserting a mortgage or privilege on, immovable property does not constitute notice to a third person not a party thereto unless a notice of the pendency of the action or proceeding is made, and filed or recorded, as required by Article 3752.

A notice of *lis pendens* serves to "inform the general public of the precise property involved in the litigation and the object or purpose of the suit with respect to the property concerned." *McClain v. NMP, LLC*, 2018-297, p. 7 (La. App. 5 Cir. 12/12/18), 262 So.3d 409, 416 (citing *L.E.C., Inc. v. Collins*, 332 So.2d 565, 568 (La. App. 1st Cir. 1976)). As this Court has explained, one "purpose of a notice of *lis pendens* is to give effective notice to third persons of the *pendency of an action* affecting immovable property." *Olano v. Karno*, 2022-0504, p. 5 (La. App. 4 Cir. 2/7/23), 357 So.3d 886, 890 (emphasis added) (quoting *Cent. St. Matthew United Church of Christ v. Atkins*, 2018-0823, p. 7 (La. App. 4 Cir. 1/30/19), 264 So.3d 1243, 1248). Further, a notice of *lis pendens* binds third parties to the ultimate outcome of a pending suit. *Ducote v. McCrossen*, 1995-2072, p. 2 (La. App. 4 Cir. 5/29/96), 675 So.2d 817, 818 (citing *Whitney Nat'l Bank v. McCrossen*, 1993-2160

---

[4] As discussed more fully throughout this Opinion, the Louisiana Legislature amended La. R.S. 9:4833(E) in 2019 with the amendment to go into effect on January 1, 2020; however, that amendment did not change the language quoted in this sentence or in the following sentence.

12

(La. App. 4 Cir. 3/29/94), 635 So.2d 401, 403). This Court has explained that to thus bind third parties to the outcome of the pending suit is another purpose of the notice of *lis pendens*. *Id.* Thus, the notice of *lis pendens* serves "in the interest of justice . . . to protect the stability of titles in the public record," and "in most cases should remain until judgment or some binding resolution that removes the property from the suit." *Jones v. United Res. Grp.*, 2022-2186, p. 7 (La. App. 1 Cir. 6/27/03), 858 So.2d 563, 567 (citing *Whitney Nat'l Bank*, 1993-2160, 635 So.2d at 403-04). That is, the idea behind the *lis pendens* is that it serves as notice about the suit until a judgment is rendered, after which the judgment itself serves as notice and binds the subject parties and third parties. *Nat'l Bank of Com. in New Orleans v. Justice*, 212 So.2d 711, 715 (La. App. 4th Cir. 1968) (citation omitted). This Court has also explained a "notice of *lis pendens* is not concerned with the merits of the litigation which prompted its recordation." *Olano*, 2022-0504, p. 6, 357 So.3d at 890 (quoting *Whitney Nat'l Bank*, 1993-2160, 635 So.2d at 403). This is because beyond notifying the public of the property involved and the object/purpose of the pending suit with respect thereto, "the notice has no role or function whatsoever" while the litigation is ongoing. *L.E.C., Inc.*, 332 So.2d at 568.

### *Interpretation of La. R.S. 9:4833(E)*

Louisiana Revised Statutes 9:4833(E) is clear and unambiguous that the notice of *lis pendens* must be filed within one year of recording the lien—there are no caveats or conditions in the statute to the effect that this deadline may change, for example, based on the circumstances surrounding a dispute as to the lien. Nonetheless, RAC essentially argues that to so hold would lead to the absurd consequence in this matter that RAC would have had the "impossibility" of filing a

13

notice of *lis pendens* when the Lien was no longer inscribed in the Orleans Parish Mortgage Records thereby preventing RAC from referencing the Lien. As 225 Baronne points out, RAC's allegation that this was an impossibility is refuted by the fact that RAC filed other documents referencing the Lien recordation number even when it was no longer inscribed in the Orleans Parish Mortgage Records, including RAC's December 21, 2016 petition to enforce its Lien and its May 26, 2017 Notice of *Lis Pendens*. RAC filed both of these documents *before* the Recorder of Mortgages reinstated the Lien. Further, RAC presented no evidence to the effect that the recordation number of its Lien had been assigned to a different, unrelated lien so as to render reference to that number futile or confusing. Rather, RAC referenced the original recordation number in its petition to enforce and Notice of *Lis Pendens*, and it sought reinstatement with a specific reference to the retroactive date of original filing. Additionally, of note, RAC has pointed to nothing that somehow legally prevented it from filing the notice of *lis pendens* during any part of the one-year period: even if RAC had done so while the matter was pending on appeal before this Court, we agree with 225 Baronne that RAC could have included a notation in the notice that there was a pending appeal. Further, even if RAC had filed a notice of *lis pendens* at some point during the one-year period and 225 Baronne sought removal of the notice of *lis pendens* during the time when the trial court's First Removal Judgment was in effect, RAC would have and should have nonetheless covered its bases under La. R.S. 9:4833(E) by having so filed the notice.

Moreover, in light of the foregoing jurisprudence interpreting the purpose of the notice of *lis pendens*, we find that the Legislature's intent in requiring a lienholder to file a *lis pendens* within one year of recording the lien per La. R.S.

14

9:4833(E) is to provide the public with *timely* notice of a dispute regarding the property and, ultimately, to bind third parties to the outcome of the suit. To interpret La. R.S. 9:4833(E) as RAC suggests (i.e., in this case that the one-year period did not begin until after the Louisiana Supreme Court's writ denial) has the effect that the public and interested third parties do not have notice of a suit affecting property until not only resolution by the trial court but also resolution by the appellate court and the Louisiana Supreme Court or the expiration of the delays for seeking appellate review. That process could take years, all the while the public does not know about the dispute. To so interpret La. R.S. 9:4833(E) would also, therefore, undermine the purpose of the notification aspect of *lis pendens* to provide the public with notice during the *pendency* of the action, not after it has concluded. *See Olano*, 2022-0504, p. 5, 357 So.3d at 890. In fact, to file the notice of *lis pendens* only after a judgment is rendered (either by the trial or appellate court) is, essentially, unnecessary from the notification standpoint because, at that point, the judgment itself serves as notice to the public. *See Nat'l Bank of Com. in New Orleans*, 212 So.2d at 715. The *lis pendens* only serves its purpose of notifying the public when the suit is still pending, so once the judgment has been rendered "the notice has no" further "role or function whatsoever" in this regard. *L.E.C., Inc.*, 332 So.2d at 568. That is, the necessity of the notification aspect of *lis pendens* ceases upon the rendering of the judgment. Further, as this Court has explained, the merits of the underlying dispute have no bearing on the notice of *lis pendens*; yet, RAC's argument is essentially that because the merits of its Lien were still being disputed, it could not file a notice of *lis pendens*.

Further, to hold, as RAC suggests, that the notice of *lis pendens* did not need to be filed until after the Louisiana Supreme Court issued its writ denial would be

15

to render meaningless part of La. R.S. 9:4833(E). That section states, in pertinent part, that "[t]he effect of recordation of a statement of claim or privilege and the privilege preserved by it shall cease as to third persons unless a notice of pendency of action in accordance with Code of Civil Procedure Article 3752, identifying the suit required to be filed by R.S. 9:4843, is filed *within one year after the date of filing the statement of claim or privilege*." (Emphasis added.) RAC's interpretation of La. R.S. 9:4833(E) would be satisfied if the statute read: "The effect of recordation of a statement of claim or privilege and the privilege preserved by it shall" not apply "to third persons unless a notice of pendency of action in accordance with Code of Civil Procedure Article 3752, identifying the suit required to be filed by R.S. 9:4843, is filed." RAC's interpretation eliminates any timeframe for filing the notice of *lis pendens* and renders the italicized portion of La. R.S. 9:4833(E) meaningless. To agree with RAC's interpretation would contradict the rule of statutory interpretation that "[c]ourts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." *Commodore*, 2019-0127, pp. 13-14, 275 So.3d at 469 (quoting *Pumphrey*, 2005-979, p. 11, 925 So.2d at 1210). That is, RAC's interpretation renders the phrase "within one year after the date of filing the statement of claim or privilege" meaningless. Moreover, we find La. R.S. 9:4833(E) to be "clear and unambiguous" and that the foregoing "application does not lead to absurd consequences," so the statute should "be applied as written." La. C.C. art. 9.

Our holding not only conforms with the general rules of statutory construction, as discussed above, but also the statutory interpretation rules particular to liens. As stated previously, courts are to strictly construe statutes

16

creating liens against the party in whose favor the lien was created, i.e., RAC in the matter *sub judice*. The failure to expressly satisfy the requirements of statutes creating liens and privileges subjects a lien to cancellation. Here, RAC failed to satisfy the temporal element of La. R.S. 9:4833(E), thereby subjecting its Lien to cancellation.

In sum, contrary to RAC's assertions, RAC had to file a notice of *lis pendens* within one year of recording its Lien, i.e., by December 22, 2016. Because RAC did not file its Notice of *Lis Pendens* until May 26, 2017, which was more than one year after recording its Lien, this formed a legal basis for cancellation of RAC's Lien. However, before affirming the trial court's judgment in this regard, we next consider whether *res judicata* precluded 225 Baronne's claim for cancellation.

### Issue Two: Whether *Res Judicata* Barred 225 Baronne's Second Removal Petition

As stated previously, resolution of this dispute next hinges on determining whether the trial court correctly denied RAC's *Res Judicata* Exception. RAC argues that 225 Baronne's claims in its Second Removal Petition existed during the First Removal Suit. RAC contends this Court's December 14, 2016 Opinion was the final judgment that must be considered for *res judicata* purposes; and RAC also contends that the "transaction or occurrence" for purposes of *res judicata* in both the First Removal Petition and the Second Removal Petition was its Lien. RAC argues that between December 23, 2016 (i.e., more than one year after RAC recorded its Lien), and April 7, 2017 (i.e., when the Louisiana Supreme Court denied 225 Baronne's writ application), 225 Baronne could have and should have asserted a claim for cancellation of RAC's Lien on the basis of an untimely notice

17

of *lis pendens* in either its rehearing application to this Court or in a pleading filed with the trial court.

225 Baronne counters the cause of action it pled in its Second Removal Petition did not exist at the time of the final judgment in the First Removal Suit. In contrast to RAC, 225 Baronne asserts the trial court's February 22, 2016 First Removal Judgment was the valid, final judgment that should be considered for *res judicata* purposes. Therefore, 225 Baronne contends it could not have asserted a cause of action relating to an untimely notice of *lis pendens* before the trial court's final judgment in the First Removal Suit because the one-year deadline for RAC to file its notice of *lis pendens* was not until *after* the date of that judgment. Additionally, 225 Baronne contends the cause of action asserted in its Second Removal Petition was based on statutory language promulgated years after the First Removal Suit ended, i.e., the 2019 amendments to La. R.S. 9:4833(E).

### *Res Judicata - Standard of Review, Principles, and Elements*

As this Court recently explained, appellate courts must determine whether the trial court's decision to grant or deny an exception of *res judicata* was "legally correct or incorrect." *Alexander v. La. State Bd. of Priv. Investigator Exam'rs*, 2023-0159, pp. 26-27 (La. App. 4 Cir. 10/25/24), ___ So.3d ___, ___, 2024 WL 4579179, at *14 (citing *Bd. of Supervisors of La. State Univ., Agr. & Mech. Coll. v. Dixie Brewing Co.*, 2013-0250, 0251, 0252, p. 2 (La. App. 4 Cir. 12/4/13), 131 So.3d 130, 132). Thus, appellate courts review the matter *de novo* "because '[t]he *res judicata* effect of a prior judgment' constitutes 'a question of law.'" *Id.* at p. 27, ___ So.3d at ___, 2024 WL 4579179, at *14 (alteration in original) (citing *LaBarre v. Occidental Chem. Co.*, 2023-0139, p. 8 (La. App. 1 Cir. 9/28/23), 376 So.3d 896, 901). If the trial court made any factual determinations in its *res*

18

*judicata* ruling, then the appellate court reviews these under the manifest error/clearly wrong standard. *1995 Nola Holdings, L.LC. v. Windy Hill Pictures L.L.C.*, 2023-0050, p. 7 (La. App. 4 Cir. 10/2/23), 376 So.3d 200, 206 (quoting *In re Precept Credit Opportunities Fund, L.P.*, 2022-0067, 0068, p. 3 (La. App. 4 Cir. 9/16/22), 348 So.3d 844, 846).

This Court also recently outlined pertinent principles applicable to *res judicata*:

> "[*Res judicata*] is a concept by which [a party] may defeat an action by declaring the claim extinguished because it already has been litigated." As this Court has explained, "[t]he doctrine of [*res judicata*] precludes re-litigation of all causes of action arising out of the same transaction or occurrence that were the subject matter of a prior litigation between the same parties." This is because "[t]he civilian concept of *res judicata* is based upon a presumption of correctness." Moreover, "[i]nherent in the concept of [*res judicata*] is the principle that a party had the opportunity to raise the claim in the first adjudication." "The doctrine of [*res judicata*] is not discretionary" but rather "mandates that final judgments be given effect."

*Alexander*, 2023-0159, pp. 28-29, ___ So.3d at ___, 2024 WL 4579179, at *15 (second, third, fifth, and sixth alterations in original) (internal citations omitted). The purpose of *res judicata* is "to promote judicial efficiency and final resolution of disputes." *1995 Nola Holdings, L.LC.*, 2023-0050, p. 6, 376 So.3d at 205 (quoting *Igbokwe v. Moser*, 2012-1366, p. 4 (La. App. 4 Cir. 4/24/13), 116 So.3d 727, 730).

Louisiana Code of Civil Procedure Article 425 and La. R.S. 13:4231 establish the legal doctrine of *res judicata* in our state. Louisiana Code of Civil Procedure Article 425(A) states, "A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." Louisiana Revised Statutes 13:4231 provides:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Though "[t]he Louisiana Supreme Court has stated that 'the chief inquiry' for determining whether [*res judicata*] applies 'is whether the second action asserts a cause of action which arises out of the same transaction or occurrence that was the subject matter of the first action,'" that is not the only inquiry. *Alexander*, 2023-0159, p. 30, ___ So.3d at ___, 2024 WL 4579179, at *15 (quoting *Burguieres v. Pollingue*, 2002-1385, p. 7 (La. 2/25/03), 843 So. 2d 1049, 1053).

Rather, a party must prove five elements to establish that *res judicata* precludes a subsequent action:

(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Id.* (quoting *Sam v. La. State Racing Comm'n*, 2023-0170, p. 5 (La. App. 4 Cir. 10/24/23), 376 So.3d 953, 957). A party asserting *res judicata* must prove all five elements by a preponderance of the evidence and establish each element "beyond

all question." *Berrigan v. Deutsch, Kerrigan & Stiles, LLP*, 2001-0612, p. 5 (La. App. 4 Cir. 1/2/02), 806 So.2d 163, 167 (citing *La. Workers' Comp. Corp. v. Betz*, 2000-0603, p. 3 (La. App. 4 Cir. 4/18/01), 792 So.2d 763, 765). That is, even if the proponent of *res judicata* fails to prove only one element, then *res judicata* cannot be invoked. *Id. See also Carollo v. Dep't of Transp. & Dev.*, 2021-0114, pp. 17-18 (La. App. 4 Cir. 10/14/21), 366 So.3d 362, 373. Because "the doctrine of *res judicata* is *stricti juris*," the existence of "any doubt concerning its applicability is resolved against its application." *Barrie v. City of New Orleans*, 2017-1001, pp. 11-12 (La. App. 4 Cir. 5/23/18), 248 So.3d 483, 490 (citing *Ins. Co. of N. Am. v. La. Power & Light Co.*, 2008-1315, p. 7 (La. App. 4 Cir. 3/4/09), 10 So.3d 264, 268).

### *Undisputed Elements: (1) Valid Judgment, (2) Final Judgment, and (3) Same Parties*

Though RAC and 225 Baronne dispute which judgment constitutes the valid final judgment for *res judicata* purposes, neither party disputes that there was in fact a valid, final judgment rendered during the First Removal Suit.[5] Additionally, neither RAC nor 225 Baronne disputes that the parties in the First and Second Removal Suits are the same: RAC, 225 Baronne, and the Recorder of Mortgages. Because these *res judicata* elements are not disputed, we move onto the ones that are disputed, numbers (4) and (5).

### *(4) Whether the Cause of Action Asserted in the Second Removal Suit Existed at the Time of the First Removal Suit*

The fourth element of *res judicata* is whether the cause or causes of action asserted in the second suit existed at the time of final judgment in the first

---

[5] RAC contends the valid, final judgment was this Court's December 14, 2016 Opinion, while 225 Baronne alleges it was the trial court's February 22, 2016 First Removal Judgment.

litigation. Thus, we must determine whether 225 Baronne's cause of action asserted in its Second Removal Petition—cancellation of RAC's lien based on an untimely notice of *lis pendens*—existed at the time of the First Removal Suit. RAC asserts that the cause of action—cancellation of the lien—did exist, citing La. C.C. art. 3367 and case law. 225 Baronne counters the 2019 amendments to La. R.S. 9:4833(E), which occurred well after the First Removal Suit, are what established its cause of action asserted in the Second Removal Petition.

As both parties correctly note, the Louisiana Legislature amended La. R.S. 9:4833(E) in 2019 (with an effective date of January 1, 2020). Prior to the amendment, La. R.S. 9:4833(E) read:

> The effect of filing for recordation of a statement of claim or privilege and the privilege preserved by it shall cease as to third persons unless a notice of pendency of action in accordance with Article 3752 of the Code of Civil Procedure, identifying the suit required to be filed by R.S. 9:4823 is filed within one year after the date of filing the statement of claim or privilege. In addition to the requirements of Article 3752 of the Code of Civil Procedure, the notice of pendency of action shall contain a reference to the notice of contract, if one is filed, or a reference to the recorded statement of claim or privilege if a notice of contract is not filed.

After the amendment, La. R.S. 9:4833(E) now reads:

> The effect of recordation of a statement of claim or privilege and the privilege preserved by it shall cease as to third persons unless a notice of pendency of action in accordance with Code of Civil Procedure Article 3752, identifying the suit required to be filed by R.S. 9:4823, is filed within one year after the date of filing the statement of claim or privilege. In addition to the requirements of Code of Civil Procedure Article 3752, the notice of pendency of action shall contain a reference to the recorded statement of claim or privilege. *If the effect of recordation of a statement of claim or privilege has ceased for lack of timely filing of a notice of pendency of action, the recorder of mortgages upon receipt of a written signed application shall cancel the recordation of the statement of claim or privilege.*

(Emphasis added.) The italicized portion constitutes the substantive, pertinent addition between the two versions. As stated, 225 Baronne alleges this created a

22

new cause of action (to cancel a lien based on an untimely-filed notice of *lis pendens*), while RAC contends the right to cancel a lien already existed by virtue of La. C.C. art. 3367.

Louisiana Civil Code Article 3367 is titled "Cancellation of recordation after effect of recordation has ceased," and it presently provides that "[i]f the effect of recordation of a mortgage, pledge, or privilege has ceased for lack of reinscription or has prescribed by lapse of time under R.S. 9:5685, the recorder upon receipt of a written signed application shall cancel its recordation." Louisiana Civil Code Article 3367 is located in Book III ("Of the Different Modes of Acquiring the Ownership of Things"), Title XXII-a. ("Of Registry"), Chapter 2 ("Mortgage Records"), and Section 3 ("Cancellation") of the Louisiana Civil Code. Located in Section 2 ("Method and Duration of Recordation"), La. C.C. art. 3357 provides the general recordation rule that "[e]xcept as otherwise expressly provided by law, the effect of recordation of an instrument creating a mortgage or pledge or evidencing a privilege ceases ten years after the date of the instrument." To avoid this, prior to the end of the deadline:

> A person may reinscribe a recorded instrument creating a mortgage or pledge or evidencing a privilege by recording a signed written notice of reinscription. The notice shall state the name of the mortgagor or pledgor, or the name of the obligor of the debt secured by the privilege, as it appears in the recorded instrument, as well as the registry number or other appropriate recordation information of the instrument or of a prior notice of reinscription, and shall declare that the instrument is reinscribed.

La. C.C. art. 3362.

As the foregoing code articles demonstrate, reinscription is the periodic re-recording of an instrument creating a mortgage or pledge or evidencing a privilege prior to the expiration of same. It is not the same as a notice of *lis pendens*, which

provides notice of a pending suit to third parties and binds them to the ultimate judgment rendered in the suit, as discussed in our analysis of issue number one. Louisiana Civil Code Article 3367 allows for cancellation of a lien for lack of reinscription, not on the basis of an untimely notice of *lis pendens*. It is worth noting another distinction between these two laws: the time periods provided in La. C.C. art. 3367 and the revised La. R.S. 9:4833(E) are different. Under La. C.C. art. 3367, cancellation for lack of reinscription cannot occur until the lapse of ten years' time, while cancellation for lack of a timely notice of *lis pendens* can occur one year after the filing of the lien. Thus, contrary to RAC's assertion, La. C.C. art. 3367 did not provide the same cause of action as the newly-revised La. R.S. 9:4833(E). Because this cause of action did not arise until the amendment to La. R.S. 9:4833(E) went into effect in 2020, i.e., after the conclusion of the First Removal Suit, 225 Baronne could not have brought it in the First Removal Suit.

Our position is also buoyed by the rules of statutory interpretation. When courts interpret statutes, courts are to "presume[] the Legislature's actions in crafting a law were knowing and intentional" and to presume the Legislature "enacted each statute with deliberation and with full knowledge of all existing laws on the same subject." *Richards Clearview City Ctr., LLC v. Starr Surplus Lines Ins. Co.*, 2024-104, p. 7 (La. App. 5 Cir. 6/5/24), 391 So.3d 101, 107 (first citing *La. Safety Ass'n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass'n*, 2009-0023, p. 10 (La. 6/26/09), 17 So.3d 350, 356; and then citing *Theriot v. Midland Risk Ins. Co.*, 1995-2895, p. 4 (La. 5/20/97), 694 So.2d 184, 186). Courts are to "plac[e] a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it." *Commodore*, 2019-0127, p. 13, 275 So.3d at 468-69 (quoting *Pumphrey*, 2005-

0979, p. 11, 925 So.2d at 1210). As stated previously, "Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." *Id.* at pp. 13-14, 275 So.3d at 469 (quoting *Pumphrey*, 2005-0979, p. 11, 925 So.2d at 1210).

If we were to agree with RAC that the amendments to La. R.S. 9:4833(E) did not create a new cause of action because this cause of action already existed in La. C.C. art. 3367, this would render the new part of La. R.S. 9:4833(E) superfluous and meaningless. Also, to take the position that the newly-revised La. R.S. 9:4833(E) merely established the same cause of action that already existed in La. C.C. art. 3367 would be to contradict the presumption that the Legislature enacted the amendments to La. R.S. 9:4833(E) with knowledge of other lien laws, namely La. C.C. art. 3367. That is, under the rules of statutory interpretation, we are to presume that the Legislature already knew about La. C.C. art. 3367 but nonetheless chose to amend La. R.S. 9:4833(E), thereby indicating its intent to establish a cause of action for cancellation of a lien on the basis of a lack of or untimely-filed notice of *lis pendens* because no such cause of action already existed in the statutory and codal law.

We must next determine whether *res judicata* prohibits a second suit if there has been an intervening change in the law like the amendment to La. R.S. 9:4833(E). If a plaintiff merely "seek[s] to rely upon different evidence," which was previously available, "to support the same legal principles," then this "does not state a new cause of action." *Bd. of Supervisors of La. State Univ., Agric. & Mech. Coll. v. Dixie Brewing Co.*, 2013-0250, 0251, 0252, p. 5 (La. App. 4 Cir. 12/4/13), 131 So.3d 130, 134 (alteration in original) (citing *Bulot v. Intracoastal Tubular Servs., Inc.*, 2004-0398, 0399, 0400, p. 8 (La. App. 4 Cir. 9/29/04), 883

25

So.2d 1146, 1151). However, as 225 Baronne points out in its brief, the United States Court of Appeals for the Fifth Circuit has held that "[*res judicata*] is no defense where, between the first and second suits, there has been an intervening change in the law." *Jackson v. DeSoto Par. Sch. Bd.*, 585 F.2d 726, 729 (5th Cir. 1978) (first citing *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 599-602, 68 S.Ct. 715, 720-21 (1948); and then citing *State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154, 162, 65 S.Ct. 573, 577 (1945)). If a "statute now provides a right, where formerly none existed," then "this constitutes a material change in the law." *Vujnovich v. State Through La. Wildlife & Fisheries Comm'n*, 434 So.2d 141, 143 (La. App. 5th Cir. 1983). A subsequent suit based on a substantive change in the law is barred by *res judicata* "unless there is clear evidence of the [L]egislature's intent" that the substantive change is to be applied retroactively. *Id.* (citing *Rodriguez v. Brown & Root, Inc.*, 410 So.2d 325, 328 (La. App. 4th Cir.1982)). *See also* La. C.C. art. 6 (establishing "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only").

As analyzed above, La. R.S. 9:4833(E) now provides a statutory right that formerly did not exist—the right to seek cancellation of a lien on the basis of the lienholder's failure to timely file a notice of *lis pendens*. Additionally, there is clear evidence of the Louisiana Legislature's intent that this substantive change is to be applied retroactively. Act No. 325 of the 2019 Louisiana Legislative session, which amended La. R.S. 9:4833, stated: "The amendments to R.S. 9:4833 *shall apply retroactively* to all works, including those begun, and those for which notice of contract was filed, prior to January 1, 2020." (Emphasis added.) Because there is clear evidence of the Legislature's intent that this substantive change to La. R.S.

26

9:4833(E) is to apply retroactively, we find *res judicata* did not preclude 225 Baronne's Second Removal Petition.

Further, to the extent RAC contends 225 Baronne had a cause of action to seek cancellation of the Lien during the First Removal Suit on the basis of jurisprudence from before the 2019 amendments to La. R.S. 9:4833(E), we disagree with this contention. In discussing the role of legislation and jurisprudence, the Louisiana Third Circuit Court of Appeal recently explained:

> The Civil Code establishes only two sources of law in Louisiana: legislation and custom. *See* La. [C.C.] art. 1. Within these two categories, legislation is superior to custom and will supercede it in every instance. *See* La. [C.C.] art. 3. Judicial decisions, on the other hand, are not intended to be an authoritative source of law in Louisiana. *See* A.N. Yiannopoulos, *Louisiana Civil Law System* § 35, p. 53 (1977). Consequently, Louisiana courts have frequently noted that our civilian tradition does not recognize the doctrine of stare decisis in our state.
>
> Instead, a long line of cases following the same reasoning within this state forms *jurisprudence constante. . . .*
>
> **Under the civilian tradition, while a single decision is not binding on our courts, when a series of decisions form a "constant stream of uniform and homogenous rulings having the same reasoning," *jurisprudence constante* applies and operates with "considerable persuasive authority."** James L. Dennis, *Interpretation and Application of the Civil Code and the Evaluation of Judicial Precedent*, 54 La. L.Rev. 1, 15 (1993). **Because of the fact that "one of the fundamental rules of [the civil law tradition] is that a tribunal is never bound by the decisions which it formerly rendered: it can always change its mind," 1 Marcel Planiol, *Treatise on the Civil Law* § 123, (La. State Law Inst, trans. 1959) (12th ed.1939), prior holdings by this court are persuasive, not authoritative, expressions of the law. *See* Yiannopoulos, *supra*, at § 35, p. 54. Thus, it is only when courts consistently recognize a long-standing rule of law outside of legislative expression that the rule of law will become part of Louisiana's custom under Civil Code article 3 and be enforced as the law of the state. *See* La. [C.C.] art. 3.**

*Doe v. Soc'y of Roman Catholic Church of Diocese of Lafayette*, 2022-120, pp. 9-10 (La. App. 3 Cir. 3/26/24), 389 So.3d 1, 8 (third alteration in original) (quoting

27

*Doerr v. Mobil Oil Corp.*, 2000-0947, pp. 13-14 (La. 12/19/00), 774 So.2d 119, 128-29, *opinion corrected on reh'g on other grounds*, 2000-0947 (La. 3/16/01), 782 So.2d 573). Based on the cases cited by RAC and our own review of the jurisprudence from before the amendments to La. R.S. 9:4833(E), there was no such "constant stream of uniform and homogenous rulings having the same reasoning" so as to constitute "*jurisprudence constante*" and establish a cause of action whereby a property owner could seek cancellation of a lien on the basis the lienholder failed to timely file its notice of *lis pendens*. Instead, the pre-amendment cases might have merely been persuasive to courts but not binding on them.

Moreover, we also note our disagreement with RAC's position that 225 Baronne's February 15, 2017 memorandum establishes 225 Baronne knew that it had a claim to seek cancellation of RAC's Lien as early as February 2017 and should have asserted same in the First Removal Suit. First, as summarized above, we disagree that such a cause of action even existed during the First Removal Suit. Second, the memorandum merely summarized 225 Baronne's (correct) understanding that RAC's Lien was ineffective against third parties, which was true even under the pre-amendment version of La. R.S. 9:4833(E). The memorandum does not state 225 Baronne believed it was capable of cancelling the Lien on the basis that RAC did not timely file a notice of *lis pendens*.

In sum, on the basis of the fourth element of *res judicata*, 225 Baronne's cause of action asserted in the Second Removal Suit (cancellation based on an untimely-filed notice of *lis pendens*) did not exist at the time of the First Removal Suit. Because RAC bore the burden of proving all five elements of *res judicata* by a preponderance of the evidence and failed to prove the fourth element, we need

not consider the fifth and final element; however, we choose to do so because the Louisiana Supreme Court refers to it as the "chief inquiry" for *res judicata*.

***(5) Whether the Cause(s) of Action Asserted in the Second Suit Arose out of the Transaction or Occurrence that Was the Subject Matter of the First Litigation***

The fifth and final *res judicata* element is whether the cause(s) of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. "What constitutes the transaction or occurrence" for *res judicata* purposes "is determined on a case-by-case basis." *Johnson v. Natchitoches Cmmty. Improvement Found., Inc.*, 2021-595, p. 7 (La. App. 3 Cir. 3/30/22), 350 So.3d 557, 561 (citing *Hy-Octane Invs., Ltd. v. G & B Oil Prods., Inc.*, 1997-28, p. 6 (La. App. 3 Cir. 10/29/97), 702 So.2d 1057, 1060). This determination is made with "an examination of the facts underlying the event in dispute." *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility*, 2003-0481, p. 5 (La. App. 1 Cir. 2/23/04), 872 So.2d 1147, 1152 (citing *Leon v. Moore*, 1998-1792, p. 5 (La. App. 1 Cir. 4/1/99), 731 So.2d 502, 505). Additionally, a court may consider (1) whether the issues of fact and law are the same; (2) whether substantially the same evidence will be presented; and (3) whether there is any logical relationship between the suits. *Durkin v. Quest, Inc.*, 1998-939, p. 4 (La. App. 5 Cir. 12/29/98), 724 So.2d 868, 870-71 (quoting *Park Club, Inc. v. Resol. Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992)).

First, the issues of law and fact between the suits are not the same. In its First Removal Petition, 225 Baronne sought cancellation of RAC's Lien on the basis that it violated the parties' contract and did not sufficiently itemize the disputed amounts in violation of La. R.S. 48220 (pre-Lien actions). In the Second Removal Suit, 225 Baronne sought cancellation of the lien on the basis of RAC's

subsequent failure to timely file its notice of *lis pendens* in violation of La. R.S. 94833(E) (post-Lien actions). Second, the same evidence would not be presented in these two suits. The First Removal Suit concerned the parties' contract and evidence of the disputed amounts owed thereunder, while the Second Removal Suit concerned the facts and timeline of RAC filing its Notice of *Lis Pendens*. Third, there is a logical relationship between the suits in the sense that underlying both suits is 225 Baronne's attempt to cancel RAC's Lien, and that is the relief sought in both suits; however, there is no connection between the *bases* on which 225 Baronne attempted to cancel the Lien in the two suits. *Cf. Frank v. St. Landry Par. Sch. Bd.*, 540 So.2d 1200, 1204 (La. App. 3d Cir. 1989) (wherein plaintiffs sought the same relief as in prior cases and on the exact same statutory basis). Even if 225 Baronne had never brought its First Removal Petition, it could have sought to cancel RAC's Lien on the unrelated basis asserted in its Second Removal Petition. The timing of RAC's filing of its Notice of *Lis Pendens* had no bearing on the claims asserted in 225 Baronne's First Removal Petition; but it is the central focus in 225 Baronne's Second Removal Petition. If RAC had timely filed its Notice of *Lis Pendens*, there would have been no basis for 225 Baronne's Second Removal Petition. Rather, RAC's untimely Notice of *Lis pendens* was what gave rise to 225 Baronne's Second Removal Petition; and 225 Baronne's ability to bring suit on that basis did not exist during the course of the First Removal Suit, as discussed previously.

The transaction or occurrence in the First Removal Suit was RAC's recording of its Lien. The transaction or occurrence asserted in the Second Removal Suit was RAC's failure to timely file its Notice of *Lis Pendens*. 225 Baronne's First and Second Removal Suits did not arise from the same transaction

30

or occurrence; so we find RAC also failed to prove the fifth element of *res judicata*.

Considering the foregoing, we conclude the trial court correctly overruled RAC's *Res Judicata* Exception and granted the relief sought in 225 Baronne's Second Removal Petition.

## DECREE

For the foregoing reasons, we affirm the trial court's April 17, 2024 judgment, which granted 225 Baronne's Petition for Cancellation of Lien; overruled RAC's *Res Judicata* Exception; and ordered the Recorder of Mortgages to remove RAC's Lien from the Orleans Parish Mortgage Records.

**AFFIRMED**